C. L. SORRELL ET AL. v. J. L. SORRELL ET AL.

(Filed 12 March, 1930.)

1. **Trusts A b—Parol trust in favor of cestui que trust may be engrafted on his deed in absence of actual fraud since fraud is presumed.**

While a grantor may not engraft a parol trust on his own deed to lands in the absence of fraud, undue influence, etc., fraud is presumed in a deed from a *cestui que trust* to a trustee, and where a party enters into possession of lands under a power of attorney to rent and manage the property for the owner, and the owner gives the deed in question in pursuance of a general scheme or agreement in order to liquidate the indebtedness on the property and prevent foreclosure, a fiduciary relationship exists between the parties and the grantor may engraft a parol trust upon the lands without allegation or evidence of actual fraud.

2. **Limitations of Actions B b—Statute does not run from demand where parties are in fiduciary relationship.**

Where a *cestui que trust* seeks to establish a trust estate in the property held in trust against the trustee taking deed therefor, and to force an accounting for rents and profits therefrom, the mere fact of demand on the trustee therefor will not terminate the trust relationship and the statute of limitations and lapse of time have no application during the continuance of the fiduciary relationship, and the *cestui que trust* is not barred from maintaining his rights.

3. **Trusts F c—Trustee will not ordinarily be permitted to terminate relationship in order to acquire trust property.**

The law will not ordinarily permit a trustee to terminate the trust relationship in order that he may personally acquire title or ownership of the property impressed with the trust.

CIVIL ACTION, before *Daniels, J.,* at November Term, 1929, of HARNETT.

The evidence tended to show that the plaintiff, C. L. Sorrell, owned 166 acres of land in Harnett County, which he had inherited from his father. The defendant, J. L. Sorrell, is a nephew of the plaintiff.

On 16 May, 1914, the plaintiff, C. L. Sorrell, executed and delivered to the defendant a power of attorney in the following language:

"Know all men by these presents, that I, Colvin L. Sorrell, of Harnett County and State of North Carolina, have made, constituted and appointed, and by these presents do make, constitute and appoint John L. Sorrell my true and lawful attorney for myself and in my name, to rent out and lease all the lands that I own and all the lands that I may own during the continuation of this power given by me. That it shall be lawful for him, the said John L. Sorrell, to enter on his duties as such attorney, to rent and buy or sell the products of my farms located in said county and known as the place I now reside upon, and adjoining the lands of W. R. Sorrell and others. To have said lands as his mind may direct in the management of buying and selling and removing as such all things at all times which go to make him, the said John L. Sorrell, agent for me, to so contract for me, feeling and knowing that it is better for my estate, I proclaim such confidence in him that I so make him my attorney for valuable services rendered to me and feeling sure of his competency to so act, giving and granting unto John L. Sorrell, said attorney, full power and authority to do and perform all and every act and thing whatsoever requirement is necessary to be done in and about the premises, as fully, to all intents and purposes, as I might or could do if personally present with full power of substitution and revocation, hereby ratifying and confirming all that John L. Sorrell, said attorney and substitute shall lawfully do or cause to be done by virtue thereof.

I have hereunto set my hand and seal this 16 May, 1914."

The plaintiff offered evidence tending to show that he was an old man and was unable to rent his land, and that he went to the defendant and asked the defendant to take charge of his property. At the time the power of attorney was executed and the defendant took charge of plaintiff's property, there was a mortgage on the property executed by plaintiff to Alonzo Parrish and the Parrish-Godwin Company, amounting to approximately $7,000. The mortgagee advertised the land for sale at public auction in March, 1915. Before the sale, the plaintiff and the defendant agreed that the defendant, J. L. Sorrell, should attend the sale and purchase the land for the plaintiff "regardless of what price was bid for the land." The defendant, in pursuance of such agreement, attended the sale and bid $12,000 for the property, and thereupon, on 16 March, 1915, Parrish-Godwin Co., mortgagee, conveyed the property to J. L. Sorrell for a recited consideration of $10,125, which said deed was duly recorded. After the sale Parrish-Godwin Company conferred with the plaintiff and agreed to carry the debt until 1 January, 1916, provided the land should be conveyed to Murchison, who was an employee of Parrish-Godwin Company, and who should hold the title to the land for the benefit of said company. Thereupon, on 17 March, 1915, J. L. Sorrell conveyed the property to W. S. Murchison, which deed was duly recorded.

The plaintiff offered evidence tending to show that the defendant, J. L. Sorrell, agreed to procure the money to pay off the Parrish-Godwin debt on or before 1 January, 1916, and that in pursuance of such agreement the defendant represented that it was necessary to have the title in his name in order to procure a loan upon favorable terms.

Subsequently, on 24 December, 1915, the plaintiff, C. L. Sorrell, conveyed the land to J. L. Sorrell, which deed was duly recorded. Thereafter, on 28 December, 1915, Murchison and wife conveyed the property to C. L. Sorrell by deed which is duly recorded. The defendant, J. L. Sorrell, and his wife, and W. R. Sorrell and wife, father of defendant, executed a deed of trust upon the property in controversy and other property belonging to W. R. Sorrell to the Life Insurance Company of Virginia, and from the proceeds of said loan paid off the Parrish-Godwin debt. Later on, the defendant secured a loan of $10,000 from his codefendant, Federal Land Bank of Columbia. The plaintiff lived with his nephew awhile and then boarded around in the neighborhood. The defendant took possession of said property, sold wood and timber, cleared up land and made extensive improvements thereon. The defendant also sold five mules belonging to the plaintiff and received all the rents and profits from said land.

The plaintiff offered evidence tending to show that in the spring of 1915 the land was worth $30,000. There was evidence on the part of the defendant tending to show that at said time the land was worth from $40 to $50 an acre. The defendant also offered evidence tending to show that the plaintiff had from time to time made statements that the defendant had purchased the land and paid for it a fair and reasonable price.

The defendant bought the 44-acre tract of land at a tax sale, but admitted there was a defect in the deed, and that for this reason he was not now claiming the property as his own. The plaintiff testified that he had made demand upon the defendant for an accounting, and that the defendant had declined to render a statement of the transactions.

The following issues were submitted to the jury:

1. "Did the defendant, J. L. Sorrell, acquire title to said 166-acre tract of land as trustee for the plaintiff?"

2. "Is the plaintiff's cause of action, as alleged in the complaint, barred by the 7-year statute of limitations?"

3. "Is the plaintiff, Calvin L. Sorrell, the owner in fee simple and entitled to the possession of the 44⅓-acre tract of land described in the complaint?"

The jury answered the first issue "Yes," and the third issue, "No," and the fourth issue "Yes," and the court instructed the jury that if the first issue was answered "Yes," the second should be answered "No."

Upon the verdict, as rendered, the following judgment was entered:

"It is now considered and adjudged by the court that the defendant, J. L. Sorrell, holds the 166-acre tract of land described in the pleadings as trustee for the benefit of the plaintiff, C. L. Sorrell.

It is further considered and adjudged by the court that the plaintiff is entitled to an accounting by said trustee, J. L. Sorrell, to the end that it may be ascertained the amount of debts of the plaintiff paid by the defendant, the improvements, if any, placed in good faith upon said land by the defendant, to the extent that the same has enhanced the value of said land, and other necessary expenses of the defendant in the discharge of his trust for the benefit of the plaintiff on the one hand, and that he may account for all moneys received by him, if any, on account of the sale of property belonging to the plaintiff, and for rents and profits received by the defendant while in the possession and control of said tract of land, and for such encumbrances placed upon said land by the defendant, J. L. Sorrell, such accounting to be had before a referee appointed or to be appointed by the court in this cause.

It is further considered and adjudged by the court that the plaintiff is the owner in fee simple and entitled to the possession of the 44⅓-acre tract of land described in the complaint, and that he have and hold possession of the same.

It further appearing to the court from the pleadings that the defendant, J. L. Sorrell, with the joinder of his wife and W. R. Sorrell and his wife, have executed unto the Federal Land Bank of Columbia a mortgage deed covering the 166 acres of land and other lands belonging to the defendant, J. L. Sorrell, as security for a recited loan of $10,000; and it further appearing to the court that as between the plaintiff, C. L. Sorrell and the Federal Land Bank of Columbia, the conveyance in said mortgage of the 166-acre tract of land is unaffected by the trust herein declared; and it further appearing to the court that the plaintiff, C. L. Sorrell, is entitled to have the Federal Land Bank of Columbia exhaust all other securities belonging to the defendant or held by it before resorting to the 166 acres of land:

It is therefore further considered and decreed by the court that the Federal Land Bank of Columbia retain undiminished all securities now held by it for the payment of said loan, and that in the event of default in the payment of said loan or any installment thereof, that the said Federal Land Bank of Columbia give due notice to the plaintiff and his assigns of record of such default, and in the event of a sale by the Federal Land Bank of Columbia of the mortgaged premises or any part thereof or the collection of its debt against J. L. Sorrell, that it be and it is hereby required to exhaust the said J. L. Sorrell and his property pledged in said mortgage before resorting to a sale of the 166 acres of

land referred to in this cause, and which is adjudged herein to be held by the said J. L. Sorrell as trustee for the plaintiff, C. L. Sorrell.

It is further considered and adjudged by the court that pending the accounting herein ordered, that the defendant, J. L. Sorrell, give a good and sufficient bond in the sum of $1,000 payable to the plaintiff, C. L. Sorrell, to the end that he will render a full accounting for the rents and profits received by him pending the accounting ordered in this cause, and will pay the same over unto the plaintiff to the extent that he may be so ordered in the further orders of the court in this cause, said bond to be approved by the clerk of this court after notice to plaintiff's attorneys, and upon the defendant's failure to give such bond, then the plaintiff may apply to the court for the appointment of a receiver to take charge of the premises and rent out the same and hold all rents and profits pending the further order of the court in this cause.

It is further considered and adjudged by the court that the defendant, J. L. Sorrell, pay the cost of this action to be taxed by the clerk of this court.

And this cause is retained for further orders and an accounting between the defendant as trustee and the plaintiff."

From the judgment so rendered the defendant appealed.

*Young & Young and R. L. Godwin for defendant.*
*J. R. Baggett and Clifford & Williams for plaintiff.*

BROGDEN, J. The defendant asserts that the plaintiff is not entitled to recover for the reason that the evidence discloses that the plaintiff is attempting to engraft a parol trust upon an absolute deed in favor of the grantor, and relies upon *Gaylord v. Gaylord,* 150 N. C., 222, 63 S. E., 1028; *Tire Co. v. Lester,* 192 N. C., 642, 135 S. E., 778; *Waddell v. Aycock,* 195 N. C., 268, 142 S. E., 10.

There was neither allegation nor proof of undue influence or actual fraud involved in the transaction. Hence, if the principles announced in the cases referred to, apply, the plaintiff is not entitled to recover.

However, the plaintiff insists that the evidence discloses that an active trust was created by virtue of the power of attorney executed and delivered by the plaintiff to the defendant, and that in pursuance of said agreement the defendant went into possession of said land and took full and complete charge thereof with power to contract with reference thereto, and that these facts and circumstances prevent the application of the principle announced in the *Gaylord case* and other cases of similar import.

We do not think that the principle contended for by the defendant is determinative of the merits of this controversy. The evidence tended to

show an active trust relationship existing between the parties, and that the conveyance of the land on 24 December, 1915, by the plaintiff to the the defendant was in pursuance of a general scheme or agreement between the parties for working out and liquidating the indebtedness owed by the plaintiff. Hence, a fiduciary relationship existed between the parties, and while there was neither allegation nor evidence of actual fraud, the law presumes fraud in transactions where confidential relationships exist between the parties. This principle was expressed in *Atkins v. Withers,* 94 N. C., 581, as follows: "The cases in which the law will presume fraud, arising from the confidential relations of the parties to a contract, are, executors and administrators, guardian and ward, trustees and *cestui que trust,* principal and agent, brokers, factors, etc., mortgagor and mortgagee, attorneys and clients, and to those have been added, we think very appropriately, husband and wife. The rule is founded on the special facilities which, in such relation, the party in the superior position has of committing a fraud upon him in the inferior situation, and the law looking to the frailty of human nature, requires the party in the superior situation to show that his action has been fair, honest and honorable, not so much because he has committed a fraud, but that he may have done so." *Norfleet v. Hawkins,* 93 N. C., 392.

Furthermore, at the time the plaintiff conveyed the land to defendant, to wit, on 24 December, 1915, the legal title to the property was then outstanding in Murchison.

Notwithstanding, the defendant insists that the statute of limitations is a bar to plaintiff's right to recover, and at all events, the plaintiff should be estopped by lapse of time from prosecuting the action. This contention, however, cannot be sustained.

This Court said in *Commissioners v. Lash,* 89 N. C., 159: "The cases in which a demand is held to be necessary, and when made to put the statute in motion, will be found to be concluded or finished agencies, where nothing remains to be done but to account for and pay over the fund. They are inapplicable to a continuous indefinite agency, in which, from the confidence reposed in the agent, he assumes fiduciary relations towards his employer in the management of interests committed to his charge and becomes a trustee. While this relation subsists, though there may have been unheeded calls on him for information, by the mutual acquiescence of the parties, it cannot be hostile so as to permit the running of the statute."

Again, in *Blount v. Robeson,* 56 N. C., 73, *Pearson, J.,* wrote: "When a confidential relation is established between parties, either by act of law, as in the case of copartners, tenants in common, etc., or by agreement of the parties as in case of a trust, or agency, the rights incident

to that relation, continue until the relation is put an end to, and the statute of limitations and lapse of time, have no application." *Lummus v. Davidson*, 160 N. C., 484, 76 S. E., 474; *Rouse v. Rouse*, 167 N. C., 208, 83 S. E., 305; *Hilton v. Gordon*, 177 N. C., 342, 99 S. E., 5.

Moreover, the law does not favor permitting a party to attempt to put an end to a trust in order that he may personally acquire title or ownership of property impressed with the trust. Hence, it appearing that a continuing and active trust existed between the parties, the *cestui que trust* is not required to take action until there has been an unqualified disavowal by clear and unequivocal acts or words. *Hospital v. Nicholson*, 190 N. C., 119, 129 S. E., 149.

We conclude, therefore, that the question was fairly submitted to the jury, and the judgment rendered upon the verdict must be affirmed.

No error.